UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

ROBERTO CARTAGENA,

                                   Defendant.

**MEMORANDUM
OPINION & ORDER**

24 Cr. 516 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Roberto Cartagena was employed as a superintendent at several New York City Housing Authority ("NYCHA") developments between 2018 and 2022. The Government alleges that during that time he solicited and received bribes from contractors seeking to perform work for NYCHA, in violation of 18 U.S.C. § 666(a)(1)(B), and extorted these same contractors, in violation of 18 U.S.C. § 1951. (Indictment (Dkt. No. 27); see Cmplt (Dkt. No. 1)) Cartagena has moved to dismiss the Indictment, arguing that the bribery and extortion counts are duplicitous and time-barred. (Def. Mot. (Dkt. No. 39) at 1)[1] In the alternative, Cartagena has moved for (1) a bill of particulars; and (2) relief pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and its progeny.[2] (Id.)

For the reasons stated below, Cartagena's motions will be denied.

## BACKGROUND

The Criminal Complaint filed against Cartagena on February 1, 2024, alleges that between 2018 and 2022 he solicited and accepted bribes from contractors in exchange for

---

[1] The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[2] Cartagena also moved to suppress out-of-court identification evidence or, in the alternative, an evidentiary hearing concerning the identification evidence. (Id.) At a May 15, 2025 conference, this Court granted Cartagena's motion for an evidentiary hearing. (See May 15, 2025 Tr. at 21-24; see also Dkt. Sheet at May 15, 2025)

awarding no-bid contracts for work to be performed at NYCHA developments, and extorted contractors under color of official right.  (Cmplt. (Dkt. No. 1) ¶¶ 1-2, 5)

The Complaint includes the following "background regarding NYCHA and [the] no-bid [contract] process" at that agency:

a.  NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

b.  NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD").  In each year from at least 2018 through 2022, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

c.  NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement transactions "in a manner providing full and open competition."  As such, goods and services must typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

d.  When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services.  This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed.  As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

e.  For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work.  The contractor performs an initial site visit and then submits an itemized proposal to the designated staff. The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued.  After the Procurement Department issues the purchase order, the contractor then performs the work.  After the work is completed, a designated NYCHA development staff member performs a site visit.  If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

(Id. ¶ 6(a)-(e))

The NYCHA Human Resources Manual provided to NYCHA employees warns that NYCHA employees may not, inter alia, "solicit, . . . agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as employees . . . of NYCHA," or "[c]oerce or attempt to coerce, by intimidation, threat or harassment, any . . . member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation." (Id. ¶ 6(f))

Cartagena was employed as a superintendent at the Johnson Houses, a NYCHA development in Manhattan, from April 2018 through December 2018. (Id. ¶ 7(a)) And from July 2021 through December 2022, Cartagena was employed as a superintendent at the Washington Houses, another NYCHA development in Manhattan. (Id. ¶ 7(b))

The Complaint alleges that in July 2018, a cooperating witness ("CW-3") began performing no-bid contracting work at the Johnson Houses, where Cartagena was the superintendent. (Id. ¶ 8(a)-(b)) CW-3's company was awarded three no-bid contracts for work at the Johnson Houses between July 2018 and August 2018. (Id. ¶ 8(b)) According to the Complaint, CW-3 paid Cartagena "approximately $500 in cash for each of the no-bid contracts [that CW-3's] Company received from CARTAGENA at [the] Johnson Houses," and "understood, based on CW-3's interactions with CARTAGENA and with other NYCHA employees who similarly required payments for work, that if CW-3 did not make payments to CARTAGENA, CW-3 would not be awarded additional no-bid contracts for work at [the] Johnson Houses." (Id. ¶¶ 8(b)-(c)) (emphasis in original)

The Complaint further alleges that "[o]n or about October 4, 2023, CW-3 reviewed photobooks containing a photograph of CARTAGENA among photographs of dozens

of other individuals.  CW-3 identified the photograph of CARTAGENA as the superintendent at

[the] Johnson Houses, the NYCHA employee to whom CW-3 had made payments in exchange

for no-bid contracts from NYCHA, though CW-3 did not recall the individual's name.  CW-3

has a contact saved in CW-3's cellphone with the name 'Rob Subher Jonsan Housing' and a

particular phone number ending in -2710 (the 'CARTAGENA Number')."  (Id. ¶¶ 8(d)-(e))

(emphasis in original)  The Complaint further alleges that commercial databases indicate that

"the CARTAGENA Number is a phone number associated with CARTAGENA."  (Id. ¶ 8(e))

(emphasis in original)

   The Complaint goes on to allege that another cooperating witness ("CW-10"),

began performing no-bid contracting work at the Washington Houses in August 2021, when

Cartagena was serving as superintendent there.  (Id. ¶¶ 9(a)-(b))  Between August 2021 and

August 2022, CW-10's company was awarded twelve no-bid contracts for work at the

Washington Houses.  (Id. ¶ 9(b))  CW-10 paid Cartagena 10% of the contract price in cash for

each of these no-bid contracts – approximately $1,000 per contract.  (Id.)  CW-10 understood,

"based on CW-10's interactions with CARTAGENA and . . . other NYCHA employees who

similarly required payments for work, that if CW-10 did not make payments to CARTAGENA,

CW-10 would not be awarded additional no-bid contracts at Washington Houses."  (Id. ¶ 9(c))

(emphasis in original)

   "On or about December 7, 2023, CW-10 reviewed photobooks containing a

photograph of CARTAGENA among photographs of dozens of other individuals.  CW-10

correctly identified the photograph of CARTAGENA as 'Roberto' at Washington Houses, the

NYCHA employee to whom CW-10 had made payments in exchange for no-bid contracts from

NYCHA. CW-10 has a contact saved in CW-10's cellphone with the name 'Robb 70 Pitt Street' and the CARTAGENA Number."[3] (Id. ¶¶ 9(d)-(f)) (emphasis in original)

On February 6, 2024, Cartagena was arrested on the Complaint (see Dkt. No. 4), and on August 29, 2024, the Government obtained an indictment charging him with soliciting and receiving a bribe, in violation of 18 U.S.C. § 666(a)(1)(B), and with extortion under color of official right, in violation of 18 U.S.C. § 1951. (Indictment (Dkt. No. 27)) According to the Indictment, Cartagena "solicited and accepted a total of at least approximately $13,000 in bribes in exchange for arranging . . . certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $140,000." (Id. ¶ 1)

## DISCUSSION

In moving to dismiss, Cartagena argues that the Indictment's bribery and extortion counts are duplicitous and time-barred. (Def. Mot. (Dkt. No. 39) at 1) Cartagena also seeks a bill of particulars and certain relief under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. (Id.)

## I.    MOTION TO DISMISS

### A.    Whether Counts One and Two Should be Dismissed as Duplicitous

In moving to dismiss the charges against him as duplicitous, Cartagena notes that "Count One charges [him with] solicit[ing] [bribes] from contractors over a period that encompassed 5 years, 2018-2022," while "Count Two alleges [that] he extorted contractors over the same period." (Def. Br. (Dkt. No. 40) at 11) (emphasis in original) Defense counsel further states that the Government has informed her that "Cartagena received:  approximately 2 bribes

---

[3]  According to the Complaint, "70 Pitt Street is the address of a NYCHA property where ROBERTO CARTAGENA, the defendant, worked prior to transferring to the Washington Houses in or about July 2021." (Id. ¶ 9(f) n.5) (emphasis in original)

from one contractor from July 2018 to August 2018 at the Johnson Houses"; "approximately 1 bribe from a contractor from December 2018 to July 2019 at the Castle Hill Houses"; "approximately 12 bribes from one contractor from August 2021-August 2022 at the Washington Houses"; "and approximately 1-2 bribes from one contractor from 2021-2022 also at the Washington Houses." (Id. at 12) (citing Walsh Aff., Ex. 8 (Feb. 3, 2025 Govt. Ltr.) (Dkt. No. 41-8))

   In arguing that the bribery and extortion counts against him are duplicitous, Defendant complains that "lumping the 16-17 criminal acts involving different individuals, at different locations and markedly different time frames into a single count (or in this case two separate counts essentially charging the same conduct) is manifestly unfair. A general verdict of guilty could very easily conceal a jury finding that the defendant was guilty of some crimes, but not others," and "there would be a high risk that the jury would not find guilt unanimously as to one or more criminal acts." (Id.)

   **1.**   **Applicable Law**

   "An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." United States v. Sturdivant, 244 F.3d 71, 75 (2d Cir. 2001) (quoting Fed. R. Crim. P 8(a) (2001); United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980)) (citing United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981)). "A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from 'the allegation in a single count of the commission of a crime by several means.'" United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992) (quoting Murray, 618 F.2d at 896).

According to the Second Circuit, "[t]he relevant policy considerations guiding a court's determination of whether a defendant was actually prejudiced by a duplicitous indictment include:"

> "avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions."

Sturdivant, 244 F.3d at 75 (quoting Margiotta, 646 F.2d at 733) (citing Murray, 618 F.2d at 896).

"Even when an indictment combines two separate crimes in a single count, prejudice to the defendant can be avoided by requiring the Government to proceed on only one theory of liability at trial or 'through jury instructions and the verdict form.'" United States v. Gilmore, No. 24-CR-127 (LJL), 2024 WL 3990604, at *1 (S.D.N.Y. Aug. 29, 2024) (quoting United States v. Arguedas, No. 20 Cr. 135 (JMF), 2021 WL 5567749, at *1 (S.D.N.Y. Nov. 29, 2021) (citing Sturdivant, 244 F.3d at 79)); see United States v. Kandic, 134 F.4th 92, 100-01 (2d Cir. 2025) (finding 18 U.S.C. § 2339B conspiracy to provide material support to a foreign terrorist organization charge duplicitous because it "'combines two or more distinct crimes into one count,'" but ruling that "'any possibility' of a non-unanimous verdict was removed by the court's 'careful charge regarding unanimity' and the special verdict sheet") (quoting Sturdivant, 244 F.3d at 75, and then United States v. Helmsley, 941 F.2d 71, 91 (2d Cir. 1991)).

### 2.    Analysis

Count One of the Indictment alleges that "[f]rom . . . 2018 through . . . 2022, . . . CARTAGENA solicited and accepted a total of at least approximately $13,000 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $140,000." (Indictment (Dkt. No. 27) ¶ 1) (emphasis in original)

Count Two alleges that "[f]rom . . . 2018 through . . . 2022, . . . CARTAGENA . . . obtained money from NYCHA contractors, with their consent, that was not due CARTAGENA or his office." (Id. ¶ 2) (emphasis in original)

Cartagena complains that Counts One and Two are duplicitous, because he "is charged in each count with approximately 16-17 distinct criminal acts, at three separate locations, over a span covering 5 years, with at least a year and a half interval during which no criminal act is alleged, and possibly as much as three years." (Def. Br. (Dkt. No. 40) at 12) While conceding that the bribery and extortion "counts can stand . . . if they constitute a continuing offense," Cartagena argues that because he "is charged with distinct allegations, involving distinct individuals at separate locations, over time spans that are separated by an extensive interval during which he is not alleged to have engaged in any criminal act," "[t]he mere fact that he is alleged to have committed the same crimes on numerous occasions does not establish a single continuing crime." (Id. at 13, 17)

The Government responds that "the charges are not duplicitous, and even if they were, they are not impermissibly so." (Govt. Opp. (Dkt. No. 46) at 13) According to the Government, "both counts charge a continuing scheme to misuse the defendant's position of trust as a NYCHA superintendent to solicit and receive illicit payments from contractors seeking contracts at NYCHA developments," and Cartagena "points to no authority – and the Government is aware of none – standing for the . . . proposition that a defendant's receipt of bribes from multiple different individuals requires each to be charged in a separate count." (Id. at 13-14) "To the contrary, bribery and extortion schemes such as the ones the defendant is charged with perpetrating are routinely – and properly – charged in single counts. Indeed, Judge Liman recently denied a motion to dismiss an indictment against another NYCHA employee

arising from the same bribery investigation (and therefore, involving very similar facts) that resulted in Cartagena's charges." (Id. at 14) (citing Gilmore, 2024 WL 3990604, at *2)

The Government further contends that "even if the charges were duplicitous . . . , the defendant has identified no prejudice other than conclusory allegations that a 'general verdict of guilty could very easily conceal a jury finding that the defendant was guilty of some crimes, but not others,' and that 'there would be a high risk that the jury would not find guilt unanimously as to one or more criminal acts.'" (Id. at 15) (citing Def. Br. (Dkt. No. 40) at 12-13) According to the Government, "the need for a unanimous verdict is properly addressed by jury instructions, not the wholesale dismissal of the Indictment." (Id. at 15-16) (citing Gilmore, 2024 WL 3990604, at *2; Arguedas, 2021 WL 5567749, at *1)

While the Second Circuit has not addressed duplicitousness in the context of bribery and extortion claims, it has made clear that criminal acts discrete in nature – committed with different people at different times and over periods as long as six years – are not necessarily duplicitous when charged in a single count under a continuing offense theory of liability. In United States v. Robinson, 294 F. App'x 630 (2d Cir. 2008), the defendant "supplied various swindlers with checks or copies of checks from other persons' accounts, which were then counterfeited or otherwise altered and used to obtain funds fraudulently." The defendant engaged in this criminal conduct between 1998 and 2004. Id. at 632. "Although the persons to whom Robinson supplied checks for these purposes changed over time, Robinson continued to purloin checks and supply them to others for fraudulent purposes until the time of his arrest in 2004." Id. After a jury convicted Robinson of bank fraud, mail fraud, wire fraud, and interstate transportation of stolen securities, Robinson appealed, arguing – inter alia – that each of the three fraud counts "was duplicitous, in that each count combined Robinson's activities in the late

1990's (when he purloined checks in Washington, D.C. and supplied them to two brothers

named Frljuckic) with his activities in the early 2000's (when he purloined checks while working

with two new employers) and in 2004 (when he supplied purloined checks to a Government

cooperator named Korac)." Id. at 631-32.  The Second Circuit rejected the defendant's

duplicitousness argument, finding that "[a]ll of these activities . . . were simply part of

Robinson's single continuing scheme, indeed, his ongoing illicit business, of selling copies or

originals of purloined checks so that others could use them to fraudulently obtain funds.  It does

not follow, as Robinson argues, from the difference of the identity of the recipients of the checks

in, and the time elapsed between, the earlier and later charged offense conduct, that he was not

engaged in a single continuing scheme.  Accordingly, there was no duplicitousness."  Id. at 632

(citing Aracri, 968 F.2d at 1518-19; Margiotta, 646 F.2d at 732-33).

   Here, as in Robinson, the fact that multiple contractors allegedly bribed Cartagena

– or were allegedly extorted by him – over a four-year period does not establish as a matter of

law that Cartagena was not engaged in a single continuing scheme to use his position as a

NYCHA superintendent to solicit bribes from and extort contractors seeking no-bid contracts

from NYCHA.

   And as the Government points out, in United States v. Gilmore, 2024 WL

3990604, Judge Liman rejected a defendant's duplicitousness challenge in a case with nearly

identical facts.  In Gilmore, the defendant was charged "with violating 18 U.S.C. § 666(a)(1)(B)

by soliciting and accepting approximately $27,000 in bribes from 'at least in or about 2016

through at least in or about 2022,' while an agent of the New York City Housing Authority

('NYCHA'), 'in exchange for arranging for certain contractors to receive no-bid contracts from

NYCHA.'"  Gilmore was also charged "with committing extortion under the Hobbs Act, 18

U.S.C. § 1951(b)(2), during the same time period and in connection with the same activity."
Gilmore, 2024 WL 3990604, at *1 (internal citations omitted). In moving to dismiss, Gilmore argued that (1) the bribery count was "duplicitous because it accuses him 'of accepting multiple (but [an] unspecified number of) bribes, from multiple (but [an] unspecified number of) contractors, in exchange for helping them receive multiple (but [an] unspecified number of) no-bid contracts'"; and (2) the extortion count was "duplicitous because it accused [him] of 'extorting an unspecified number of contractors on an unspecified number of occasions.'" Id. at *2 (internal citations omitted).

In rejecting Gilmore's argument that the indictment was impermissibly duplicitous, Judge Liman reasoned as follows:

> "[U]nder the law of this Circuit, 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.'" [Aracri, 968 F.2d at 1518] (quoting United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989) (citation omitted), cert. denied, 493 U.S. 1081 (1990)). The only Second Circuit case cited by Defendant to support the notion that separate bribes and separate acts of extortion each must be charged in separate counts is the 1967 decision in United States v. Cohen, 384 F.2d 699 (2d Cir. 1967). But Cohen stands for the proposition that multiple payments made pursuant to a single bribery agreement need not be charged in a single count. See id. at 700. "Nothing in Cohen dictates that a defendant must be charged with a separate offense for each particular alleged payment simply because he may be so charged." United States v. McGuinness, 764 F. Supp. 888, 892 (S.D.N.Y. 1991).
> As reflected in the complaint supporting Defendant's arrest, the charges in the Indictment relate to a continuing scheme to extract bribes from contractors seeking NYCHA business. Dkt. No. 1; see United States v. Robinson, 294 F. App'x 630, 632 (2d Cir. 2008). That same complaint gives notice to Defendant of the number of bribes, the number of contractors, and the number of no-bid contracts, as well as the locations of the contracts and details regarding how Defendant purportedly solicited the payments. Dkt. No. 1 ¶ 8. That level of detail protects Defendant against the theoretical risk that he would not be able to protect himself against double jeopardy in a subsequent prosecution. See Margiotta, 646 F.2d at 733.

Id. (emphasis in original).

Here, as in Gilmore, the bribery and extortion counts charge that Cartagena participated in a continuing scheme – over a four-year period – to misuse his position as a NYCHA superintendent to solicit and receive illegal payments from contractors seeking no-bid contracts at NYCHA developments.  (Cmplt. (Dkt. No. 1); Indictment (Dkt. No. 27))  The Government disclosed in the Complaint (1) that two contractors had made such payments to Cartagena; (2) the NYCHA facilities at which the work was to be performed; (3) the amounts and/or percentages of contract value the contractors paid to Cartagena; (4) the time period in which the payments were solicited and paid; and (5) the medium in which payment was paid (cash).  (See Cmplt. (Dkt. No. 1); Indictment (Dkt. No. 27))

In asserting that Cartagena demanded and received the unlawful payments as part of a continuing scheme that took place over a period of years, the Government cites, inter alia, evidence that "once the price was established, CW-10 continued to pay the same amount [to Cartagena] in the same manner without needing to be re-solicited for a payment after each contract, because it was understood that CW-10 must continue making payments to Cartagena if CW-10 wanted Cartagena to continue awarding contracts to CW-10."  (See Govt. Opp. (Dkt. No. 46) at 13; see also Cmplt. (Dkt. No. 1))  Given that Cartagena – in his capacity as superintendent of two NYCHA developments – is alleged to have received cash bribes from multiple contractors in similar percentages of the total contract value in exchange for awarding no-bid contracts, a reasonable jury could find that he committed these criminal acts as part of a continuing scheme.  See Gilmore, 2024 WL 3990604, at *2 (finding on a very similar record that the bribery and extortion charges in that case "relate to a continuing scheme to extract bribes from contractors seeking NYCHA business").  Moreover, Cartagena has cited no case suggesting that – where multiple bribes are solicited and paid, and where multiple payments are extorted, as part of a

continuing course of conduct – the Government is required to charge each bribe and each extortion as a separate count.

As to the notice and double jeopardy concerns cited by the Second Circuit in Sturdivant, 244 F.3d at 75 – even before producing Section 3500 material to the defense on May 9, 2025 – the Government provided notice to Cartagena of the approximate number of bribes, the approximate number of contractors, the amounts paid, the number of no-bid contracts, the locations where the work was to be performed, and details regarding how Cartagena purportedly solicited the payments. (See Walsh Aff., Ex. 8 (Feb. 3, 2025 Govt. Ltr.) (Dkt. No. 41-8) at 2-3 ("The Government currently intends to prove at trial that the defendant accepted bribes at or near the following locations and during the following approximate time periods: 1. Johnson Houses, 1844 Lexington Avenue, New York, New York, 10029. July 2018 to August 2018: approximately 2 bribes from one contractor in connection with no-bid contracts at the development. 2. Castle Hill Houses, 645 Castle Hill Avenue, Bronx, New York 10473. December 2018 to July 2019: approximately 1 bribe from one contractor in connection with a bid-contract at the development. The bribe was paid at the development before the job under that contract was closed. 3. Washington Houses, 1773 Third Avenue, New York, New York 10029. August 2021 to August 2022: approximately 12 bribes from one contractor in connection with no-bid contracts at the development. 2021 to 2022: approximately 1 to 2 bribes from one contractor in connection with no-bid contracts at the development."); Cmplt. (Dkt. No. 1) ¶¶ 8(b)-(c), 9(b)-(c) ("CW-3 paid CARTAGENA approximately $500 in cash for each of the no-bid contracts the CW-3 Company received from CARTAGENA at Johnson Houses. CW-3 understood, based on CW-3's interactions with CARTAGENA and with other NYCHA employees who similarly required payments for work, that if CW-3 did not make payments to

CARTAGENA, CW-3 would not be awarded additional no-bid contracts for work at Johnson

Houses . . . . CW-10 paid CARTAGENA approximately 10% of the contract price for each of the

approximately 12 no-bid contracts the CW-10 Company received from CARTAGENA at

Washington Houses.  The contracts were typically worth approximately $10,000 each, and CW-

10 therefore paid CARTAGENA approximately $1,000 in cash per contract.  CW-10 understood,

based on CW-10's interactions with CARTAGENA and with other NYCHA employees who

similarly required payments for work, that if CW-10 did not make payments to CARTAGENA,

CW-10 would not be awarded additional no-bid contracts for work at Washington Houses.")

(emphasis in original))  In sum, as in <u>Gilmore</u>, the Government provided sufficient detail – even

prior to the disclosure of Section 3500 material – to ensure that Cartagena would not face "the

theoretical risk that he would not be able to protect himself against double jeopardy in a

subsequent prosecution."  <u>Gilmore</u>, 2024 WL 3990604, at *2.[4]

　　　　Given the evidence proffered by the Government in connection with its

continuing scheme theory of liability, the Court concludes that the Indictment is not

impermissibly duplicitous.

　　　　Moreover, even if the bribery and extortion counts were duplicitous, Cartagena

has not explained why appropriate jury instructions and an appropriate verdict sheet cannot

ensure that he suffers no unfair prejudice.  For example, the Court could instruct the jury that –

prior to convicting on either count – the jury must agree unanimously as to which alleged bribes

---

[4]  The Section 3500 material produced to the defense on May 9, 2025 – a month before the trial
date – discloses the identity of the five anticipated contractor witnesses, the companies for which
those contractors worked, the approximate number of no-bid contracts involved, the approximate
amount of the bribes, approximately when the payments were made, the particular contracts for
which Cartagena allegedly demanded bribes, and the position Cartagena held when he allegedly
solicited bribes and extorted payments.  (<u>See, e.g.</u>, 3501-008 at 1, 3; 3501-028 at 2-3; 3502-045
at 1-2; 3503-238 at 1-3; 3503-256 at 1, 4; 3506-152 at 2, 6; 3507-023 at 2-3; 3507-025 at 1)

or extortions the Government proved beyond a reasonable doubt. And a verdict sheet could be prepared with interrogatories aimed at the same issue. See Gilmore, 2024 WL 3990604, at *2 ("Finally, to the extent that the evidence at trial fails to prove the existence of such a single continuing scheme, any prejudice to Defendant [related to duplicitous charges] can be cured by jury instructions and an appropriate verdict form with an interrogatory." (citing United States v. Rumore, No. 07-cr-1167 (LTS), 2008 WL 2755827, at *4 (S.D.N.Y. July 14, 2008))

While Cartagena contends that "no jury instruction . . . can alleviate [the] prejudice [he will suffer from the allegedly duplicitous counts]" (see Def. Reply (Dkt. No. 47) at 11), he does not explain why this is so, and ignores well established Second Circuit law holding that appropriate jury instructions and special verdict forms can adequately address any prejudice resulting from a duplicitous count. Kandic, 134 F.4th at 100-01 (concluding that 18 U.S.C. § 2339B conspiracy to provide material support to a foreign terrorist organization charge was duplicitous because it "'combines two or more distinct crimes into one count,'" but finding that "'any possibility' of a non-unanimous verdict was removed by the court's 'careful charge regarding unanimity' and the special verdict sheet") (quoting Sturdivant, 244 F.3d at 75, and then United States v. Helmsley, 941 F.2d 71, 91 (2d Cir. 1991)); Sturdivant, 244 F.3d at 79 ("prejudice to the defendant [from a duplicitous count] can be avoided . . . by a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction"); Helmsley, 941 F.2d at 91 ("any possibility of a duplicitous verdict was removed by Judge Walker's careful charge regarding unanimity on Count 1," which charged a single conspiracy "to accomplish five different illegal objectives").

For all these reasons, Cartagena's motion to dismiss Counts One and Two as duplicitous will be denied.

**B.**    **Whether Counts One and Two Are Time-Barred**

Cartagena contends that Counts One and Two must be dismissed "because they allege conduct that occurred outside the [five-year] statute of limitations." (Def. Br. (Dkt. No. 40) at 18, 24)[5]  In this regard, Cartagena cites the Government's allegations that he received bribes from contractors while employed at (1) the Johnson Houses during the period between July 2018 and August 2018; and (2) the Castle Hill Houses during the period between December 2018 and July 2019. (Id. at 19) (citing Walsh Aff., Ex. 8 (Feb. 3, 2025 Govt. Ltr.) (Dkt. No. 41-8))  According to Cartagena, this alleged conduct "is outside the statute of limitations[,] as the indictment was filed on August 29, 2024." (Id.)

While Cartagena acknowledges that – where a defendant engages in a continuing offense – "the general principle that the statute begins to run when the offense is complete" may not apply, he contends that "[t]he 'continuing offense' exception in the context of the statute of limitations has been applied in narrow circumstances that are distinct from the charges in this indictment and has been rejected in contexts that are similar to this case." (Id. at 20)

In response, the Government again argues that "the offenses charged in both Count One and Count Two are continuing schemes," because "[t]he defendant abused his position as a NYCHA superintendent to demand payments from contractors in the same manner and for the same purpose – cash bribes or extortionate payments in exchange for the defendant awarding work or signing off on work that had been completed." (Govt. Opp. (Dkt. No. 46) at 21)

_____

[5] In the alternative, Cartagena seeks to preclude the Government from offering evidence of conduct that occurred outside the five-year statute of limitations. (Def. Br. (Dkt. No. 40) at 25)

The Government also points out that the Indictment would not – in any event – be subject to dismissal, because it "plainly alleges . . . bribery [and extortion] conduct by the defendant that occurs well within the statutory limitations period." (Id. at 24)

Finally, the Government contends that, "[a]t a minimum, the defendant's motion to dismiss based on the statute of limitations is premature." (Id.) (citing Gilmore, 2024 WL 3990604, at *5 ("[w]hether the Government can show" that "the bribes were not isolated payments but were part of an ongoing relationship between the parties" will "depend on the evidence presented" at trial)). According to the Government, "[w]hether the allegations 'are sufficiently cohesive as to constitute a single scheme is an evidentiary question that cannot be resolved on a motion to dismiss the indictment.'" (Id.) (quoting Gilmore, 2024 WL 3990604, at *5)

### 1.    **Applicable Law**

The parties agree that the charges here are subject to a five-year limitations period. (Def. Br. (Dkt. No. 40) at 18; Govt. Opp. (Dkt. No. 46) at 22, 25); see 18 U.S.C. § 3282(a) ("no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed").

"The statute of limitations for prosecuting an offense runs from the moment the offense is completed. Ordinarily, completion occurs at the moment the defendant's conduct satisfies every element of the offense. A continuing offense presents an exception to the rule," United States v. Green, 897 F.3d 443, 448 (2d Cir. 2018) (internal citation omitted) (citing Toussie v. United States, 397 U.S. 112, 115 (1970)), because "[a] 'continuing offense' is, in general, one that involves a prolonged course of conduct; its commission is not complete until the conduct has run its course." United States v. Rivera-Ventura, 72 F.3d 277, 281 (2d Cir.

1995). "Though some conduct, even before it is concluded, may fit the statutory definition of a crime, thereby permitting institution of a prosecution before the offense is complete, the limitations period for a continuing offense does not begin until the offense is complete." Id. (internal citations omitted). "[A] crime is not a continuing offense 'unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" Green, 897 F.3d at 448 (quoting Toussie, 397 U.S. at 115).

2.    **Analysis**

The Indictment was filed on August 29, 2024.  Accordingly, any alleged criminal conduct that took place before August 29, 2019 is time-barred, unless the charged offenses constitute continuing offenses for purposes of the statute of limitations.

The Supreme Court has instructed that a crime is not a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Toussie, 397 U.S. at 115.  In this regard, the Second Circuit has cautioned that "examin[ing] . . . the specific facts of the case" in determining whether a charged offense constitutes a "continuing offense" is an "approach [that] is inconsistent with the Supreme Court's rationale in Toussie, which looks to Congress's intent as expressed in the 'explicit language' of the statute." Green, 897 F.3d at 449 (quoting Toussie, 397 U.S. at 115).

As to the bribery count, Cartagena argues that "although the [Second] Circuit has not explicitly held that a violation of § 666(a)(1)(B) is not a continuing offense for statute of limitation purposes, it has come close."  (Def. Br. (Dkt. No. 40) at 21)  In this regard, Defendant cites Green, 897 F.3d at 449, where the court "explicitly held" "that theft or embezzlement" in violation of 18 U.S.C. § 641 "is not a continuing offense," relying on "United States v. Yashar,

18

166 F.3d 873 (7th Cir. 1999)[,] wherein the Seventh Circuit held that § 666 is not a continuing

offense for statute of limitations purposes." (Def. Br. (Dkt. No. 40) at 21)  Cartagena points out

that the Green court stated that its

> "analysis follows the Seventh Circuit's interpretation of a closely related statute, 18
> U.S.C. § 666.  Section 666 among other things makes it a federal crime for the agent of
> an entity that receives federal funds to steal the entity's property.  The Seventh Circuit
> held that a violation of Section 666 does not become a continuing offense simply because
> the charging instrument describes a continuing course of conduct.  The court noted that
> 'the . . . nature of a defendant's actions has never been the benchmark of a continuing
> offense under Toussie.  Instead, the focus is on the statutory language.'"

(Id. (quoting Green, 879 F.3d at 449 (quoting Yashar, 166 F.3d at 877))

Here, Section § 666(a)(1)(B) makes it unlawful for the agent of any state or local

government to "corruptly solicit[] or demand[] for the benefit of any person, or accept[] or

agree[] to accept, anything of value from any person, intending to be influenced or rewarded in

connection with any business, transaction, or series of transactions of such organization,

government, or agency involving any thing of value of $5,000 or more."  18 U.S.C. §

666(a)(1)(B).  The statute thus makes unlawful the acceptance of bribes while "intending to be

influenced or rewarded in connection with any . . . series of transactions."  Given the reference to

a "series of transactions," it is clear that "the statutory language describing the offense

'contemplates a prolonged course of conduct.'"[6]  United States v. Eppolito, 543 F.3d 25, 47 (2d

Cir. 2008) (quoting Toussie, 397 at 120); see also United States v. Fitzgerald, 514 F. Supp. 3d

721, 758 (D. Md. 2021) (rejecting defense argument that a violation of Section 666(a)(1)(B) is

not a continuing offense for statute of limitations purposes; "[g]iven that . . . Congress

contemplated the existence of . . . 'stream of benefits' bribery schemes through its express

---

[6]  By contrast, 18 U.S.C. § 641 – the statute at issue in Green, 897 F.3d at 449 – does not include
the "series of transactions" language or otherwise reference a prolonged course of conduct.  See
18 U.S.C. § 641.

inclusion of a 'series of transactions' within the gambit of § 666, it is simply unfathomable that Congress did not intend to protect the integrity of federal funds from corruption by limiting complex and continuous schemes to only individual acts"). This Court concludes that a violation of 18 U.S.C. § 666(a)(1)(B) constitutes a continuing offense for purposes of the statute of limitations.

As to the extortion count, Cartagena acknowledges that "the [Second] Circuit held [in United States v. Smith, 198 F.3d 377, 384 (2d Cir. 1999)] that extortion under [18 U.S.C. § 1951] is a continuing offense for venue purposes." He argues, however, that "it is an unwarranted reach to extend that rationale into the context of the statute of limitations." (Def. Br. (Dkt. No. 40) at 23)

In support of this argument, Cartagena goes on to analyze whether the facts in a variety of cases – including United States v. Silver, 864 F.3d 102, 122 (2d Cir. 2017) (holding that in a Hobbs Act extortion case "the Government need only prove that some aspect of the particular quid pro quo scheme continued into the statute of limitations period") – are distinguishable or analogous to those here. (See id. at 23-24) As discussed above, however, "examin[ing] . . . the specific facts of [a] case" when considering whether a particular crime is a continuing offense is an "approach [that] is inconsistent with the Supreme Court's rationale in Toussie." Green, 897 F.3d at 449. Instead, the relevant inquiry is whether the "'explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" Id. at 448 (quoting Toussie, 397 U.S. at 115).

The essence of the Hobbs Act is to make unlawful "[i]nterference with commerce by threats or violence." 18 U.S.C. § 1951. The statute broadly renders illegal any conduct that

"in any way or degree obstructs, delays, or affects commerce . . . by . . . extortion." 18 U.S.C. § 1951(a). "Commerce" is broadly defined to include, inter alia, "all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof." 18 U.S.C. § 1951(b)(3). "'[E]xtortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Because the "commerce" referenced by Congress is – by its very nature – fluid and ever-flowing, repeated, wrongful coercive conduct by the same defendant pursuant to a single unified scheme or plan – including the same wrongful use of authority under color of official right – threatens a continuing "interference with commerce" and thus constitutes a continuing offense.

Indeed, the vast weight of authority holds "that Congress must assuredly have intended that [Hobbs Act extortion] be treated as a continuing [offense]," Toussie, 397 U.S. at 115, where a defendant pursued a single and unified extortion scheme, even where that scheme took place over a period of years, involved multiple victims, and involved multiple extorted payments.

Here, Defendant Cartagena is alleged to have pursued that sort of unified common scheme or plan. As alleged by the Government, during the period between 2018 and 2022, he used his position as a NYCHA superintendent – that is, acting "under color of official right" – to "obtain[] money from NYCHA contractors, with their consent, that was not due CARTAGENA or his office." (Indictment (Dkt. No. 27) ¶ 2) (emphasis in original) The fact that Cartagena's alleged scheme took place over a number of years, involved multiple contractor victims and multiple payments, does not change the fact that this alleged scheme is a continuing offense.

In United States v. Smith, 198 F.3d at 384, the Second Circuit concluded that Hobbs Act extortion is a "continuing offense" for purposes of the federal venue statute, 18 U.S.C. 3237(a).  In so ruling, the Circuit cited with approval "several courts [that] have held that Hobbs Act and extortion crimes involving multiple payments are continuing offenses for purposes of statutes of limitations," including United States Textiles, Inc. v. Anheuser-Busch Cos., Inc., 911 F.2d 1261, 1265 (7th Cir. 1990) ("Hobbs Act extortion encompassing multiple payments is a continuing offense"); United States v. Bucci, 839 F.2d 825, 829-30 (1st Cir.1988) (finding continuing offense where government had presented "overwhelming evidence that all the payments . . . were the consummation of [an] extortionate scheme which was a single and unified one") (internal quotations and citations omitted); and United States v. Aliperti, 867 F.Supp. 142, 147 (E.D.N.Y. 1994) (finding continuing offense "where the Indictment alleges that the defendants engaged in a single, continuous plan of extortion envisioning multiple payments over several years from certain named companies"; noting that the First, Third, and Seventh Circuits have "determined that a single scheme of extortion spanning multiple years may be considered a continuing offense for statute of limitations purposes").  In citing these cases, the Second Circuit noted that each court had concluded that "a single extortionate act committed within the statute of limitations period was sufficient to make defendant liable for all acts comprising the single scheme, even where the additional acts took place beyond the statute of limitations."  Smith, 198 F.3d at 384.  The same logic applies here.  See also United States v. Burfoot, 899 F.3d 326, 338 (4th Cir. 2018) (holding that extortion count was not time-barred because it "allege[d] a continuous scheme of extortion and [defendant] committed acts in furtherance of that scheme within the five-year limitations period"); United States v. Forszt, 655 F.2d 101, 104 (7th Cir. 1981) ("Hobbs Act extortion is also a continuing offense so that no

statute of limitations problem exists where, as here, there is a single continuous plan of extortion embracing multiple payments over a period of years."); United States v. Thompson, No. CR. A. 07-30022, 2008 WL 2127852, at *3 (W.D. La. May 19, 2008) (holding that a Hobbs Act extortion violation "is a continuing offense [which] does not present a statute of limitations problem as long as there is evidence of a continuous course of conduct or extortionate scheme, and the Government proves that at least one payment fell within the five-year period").

In Gilmore, 2024 WL 3990604, Judge Liman considered and rejected the same statute of limitations arguments made by Cartagena here, noting that even if the Government's single scheme argument was incorrect, there would be no basis for dismissing the indictment, because the Government had clearly alleged bribes and extortionate conduct that fell within the five-year statute of limitations. Id. at *3-*5. The circumstances are the same here.

Count One of the Indictment alleges that "[f]rom . . . 2018 through . . . 2022, . . . CARTAGENA solicited and accepted a total of at least approximately $13,000 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $140,000," while Count Two alleges that "[f]rom . . . 2018 through . . . 2022, . . . CARTAGENA . . . obtained money from NYCHA contractors, with their consent, that was not due CARTAGENA or his office." (Indictment (Dkt. No. 27) ¶¶ 1-2) (emphasis in original)

The Complaint makes clear that the Government is charging bribes and extortion that took place within the five-year statute of limitations period. For example, the Complaint alleges that a NYCHA contractor informed the Government that his company was awarded twelve no-bid contracts for work at the Washington Houses between August 2021 and August 2022 – when Cartagena was serving as superintendent there – and that the cooperating witness

paid Cartagena 10% of the contract price in cash in order to obtain these contracts.  (Cmplt. (Dkt. No. 1) ¶¶ 9(a)-(b))  The cooperating witness understood, "based on [his] interactions with CARTAGENA and . . . other NYCHA employees who similarly required payments for work, that if [he] did not make payments to CARTAGENA, [he] would not be awarded additional no-bid contracts at Washington Houses."  (Id. ¶ 9(c)) (emphasis in original)

   While Cartagena argues that the various alleged bribes and extortionate acts do not constitute a single scheme, that issue cannot be resolved at this stage of the proceedings.  See United States v. Sampson, 898 F.3d 270, 279 (2d Cir. 2018) ("In some circumstances, . . . a party may raise and establish a statute-of-limitations defense via a Rule 12(b) motion, such as when the defense is clear from the face of the indictment . . . . But when such a defense raises dispositive 'evidentiary questions,' a district court must defer resolving those questions until trial.") (internal citations omitted).  This Court will "entertain a request for an appropriate jury instruction and verdict form to ensure that the only basis on which Defendant may be convicted is if he committed a crime that occurred at least in part after" August 29, 2019.  Gilmore, 2024 WL 3990604, at *5; see also United States v. Grammatikos, 633 F.2d 1013, 1022 (2d Cir. 1980) ("Where the defense[] of time-bar . . . [is] squarely interposed, [it] must be submitted to a properly instructed jury for adjudication." (citing United States v. Alfonso-Perez, 535 F.2d 1362, 1364 (2d Cir. 1976)).

   Cartagena's motion to dismiss Counts One and Two as time-barred – or to preclude the Government from offering proof of conduct that occurred prior to August 29, 2019 – will be denied.

## II. **MOTION FOR A BILL OF PARTICULARS**

   Cartagena has moved for a bill of particulars disclosing:

   1) The identity of the vendors/companies alleged to have made the

payments to the defendant or from whom it is alleged the defendant solicited payment;

2) The approximate date of each bribe alleged to have been paid;

3) The location where each bribe was allegedly paid;

4) The approximate amount of each bribe alleged to have been paid to the defendant;

5) The approximate date of where each bribe is alleged to have been solicited;

6) The location where each bribe was allegedly solicited;

7) The approximate amount of each bribe allegedly solicited;

8) The number of vendors from whom it is alleged the defendant solicited or received a bribe;

9) The names of the principals of each of the vendors/companies allegedly bribed or solicited.

10) Identify any contracts that were allegedly awarded in connection with either a bribe or solicitation.

11) Identify if any of the contracts that were allegedly awarded in connection with either a bribe or solicitation/extortion were blanket contracts or micro-purchase orders.

(Def. Br. (Dkt. No. 40) at 25-26) (citing Walsh Aff., Ex. 6 (Nov. 25, 2024 Walsh Ltr.) (Dkt. No. 41-6))

According to Cartagena, "the discovery provided thus far do[es] not provide sufficient information for the Defendant to meaningfully defend against the allegations."  (Id. at 28)  "By failing to narrow the dates of the purported bribes and allowing there to be sprawling time periods – two bribes over a two-month period about seven years ago, one bribe over an eight-month period over six years ago, twelve bribes over a thirteen-month period three to four years ago and one to two bribes over a two-year period three to four years ago ('2021 to 2022') – the defense is left unguided."  (Id.) (citing Walsh Aff., Ex. 8 (Feb. 3, 2025 Govt. Ltr.) (Dkt. No. 41-8) at 2-3)  According to Cartagena, "[c]ourts in this Circuit have often required the

Government to provide the dates, amounts, and locations of alleged bribes in which a defendant

is charged with the giving or receiving of a bribe" (id. at 29-30) (citing, inter alia, United States

v. Siddiqi, No. 06 CR. 377 SWK, 2007 WL 549420, at *2 (S.D.N.Y. Feb. 21, 2007) and United

States v. Lino, No. 00 CR. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2007)), and "[d]istrict

courts also have discretionary authority to order pretrial disclosure of the identity of the

Government's witnesses." (Id. at 30-31) (citing United States v. Washington, 947 F. Supp. 87,

88-90 (S.D.N.Y. 1996) and United States v. Cannone, 528 F.2d 296, 298-301 (2nd Cir. 1975))

 Cartagena contends that a bill of particulars is necessary here because "the

identities of the contractor witnesses and their companies are essential and material, especially as

the entire case rests on the accuracy and veracity of the witnesses' claims," and "without

knowing the names of the companies and, importantly, the specific individuals employed by the

companies alleging the criminal conduct, the defense cannot meaningfully analyze the

allegations in the context of the incredibly dense purchase order spreadsheets that the

Government has provided in discovery." In this regard, Defendants notes that the purchase order

spreadsheets "reference NYCHA vendor contracts spanning nearly a decade and reference

approximately 2.5 million contractor interactions with NYCHA." (Id. at 31) (citing Walsh Aff.

(Dkt. No. 41) ¶ 18)

 In response, the Government argues that "the Complaint, Indictment, details

voluntarily provided by the Government in its January 21 and February 3, 2025 letters, and

voluminous discovery provide sufficient detail to inform the defendant of the crimes with which

he is charged." (Govt. Opp. (Dkt. No. 46) at 26-27) In this regard, the Government notes that it

has "provide[d] the approximate time period and location of the offense[s]" and "identifie[d] the

bribes and extortionate payments that the defendant is charged with taking, including the

approximate total dollar amount of those bribes and extortionate payments." (Id. at 27)  The Government further notes that "[t]he Indictment is . . . supplemented by robust pre-trial disclosures that the Government has already made and plans to make concerning its evidence and witnesses," including "the Complaint against the defendant, which provides additional detail concerning the defendant's commission of the charged offenses, including his receipt of bribes from two contractors in exchange for no-bid contracts at specific housing developments and timeframes." (Id.) (citing Cmplt. (Dkt. No. 1))  The Government represents that it has provided "copious discovery materials, including records of the no-bid contracts for which the defendant allegedly solicited and accepted bribes, as well as . . . supplemental details regarding the approximate number of contractors [who paid bribes to the Defendant], [the] approximate number of bribe or extortionate payments, approximate timeframes, and the housing developments at which the defendant was alleged to have received bribes or extortionate payments." (Id.)  The Government also points out that it "will produce to the defense, pursuant to the pretrial disclosure deadlines endorsed by the Court, Jencks Act material by May 9, 2025; a witness list by May 16, 2025; and a list of trial exhibits by May 23, 2025." (Id. at 28) (internal citation omitted) (citing Dkt. No. 45)  "The defendant thus has ample notice of the charges against him, and will receive additional evidentiary detail of the Government's anticipated proof reasonably in advance of trial." (Id.) (citing Chambers, 2018 WL 1726239, at *2; United States v. Brewster, No. 19 Cr. 833 (SHS), 2021 WL 3423521, at *2 (S.D.N.Y. Aug. 5, 2021))

Consistent with the pretrial disclosure deadlines ordered by this Court, the Government made production of Section 3500 material to Defendant on May 9, 2025 – a month before the June 9, 2025 trial date.  The Section 3500 material includes, inter alia, the identity of the contractors who made payments to Cartagena and who are expected to testify at trial; the

companies for whom those contractors were working; the approximate number of no-bid

contracts involved; descriptions of certain contracts for which Cartagena demanded bribes; the

amount of the bribes; approximate dates as to when the payments were demanded and made; and

the position Cartagena held when he allegedly solicited bribes and extorted payments.  (See, e.g.,

3501-008 at 1, 3; 3501-028 at 2-3; 3502-045 at 1-2; 3503-238 at 1-3; 3503-256 at 1, 4; 3506-152

at 2, 6; 3507-023 at 2-3; 3507-025 at 1)

### A.      Applicable Law

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek

a bill of particulars where necessary "'to prepare for trial, to prevent surprise, and to interpose a

plea of double jeopardy should he be prosecuted a second time for the same offense.'"  United

States v. D'Amico, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (quoting United States v.

Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988)).  The decision to grant or deny a bill of

particulars "rests within the sound discretion of the district court."  United States v. Bortnovsky,

820 F.2d 572, 574 (2d Cir. 1987) (per curiam).

"A bill of particulars is not a general investigative tool, a discovery device or a

means to compel the government to disclose evidence or witnesses to be offered prior to trial."

United States v. Gibson, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001) (citing United States v.

Strawberry, 892 F. Supp. 519, 526 (S.D.N.Y. 1995)).  "Instead, its purpose is to supplement the

facts contained in the indictment when necessary to enable defendants to identify with sufficient

particularity the nature of the charges against them."  United States v. Gotti, No. S4 02 CR

743(RCC), 2004 WL 32858, at *8 (S.D.N.Y. Jan. 6, 2004) (citing Bortnovsky, 820 F.2d at 574);

accord United States v. Mandell, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010) ("The standard for

determining whether a bill of particulars is appropriate is based on necessity. . . .").

"Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." Bortnovsky, 820 F.2d at 574 (citations omitted). "The Government d[oes] not[, however,] fulfill its obligation merely by providing mountains of documents to defense counsel[,] who [a]re left unguided as to which documents [the Government will use at trial]." Id. at 575. Where a defendant seeks a bill of particulars, "the proper inquiry is not whether the requested information would be helpful to the defense, but rather whether the information is necessary to the defense." United States v. Dupree, No. 10-CR-627 (KAM), 2011 WL 5976006, at *6 (E.D.N.Y. Nov. 29, 2011) (emphasis in original) (citations omitted).

**B.    Analysis**

Even prior to the recent production of Section 3500 material, the Government had provided extensive information to Defendant concerning the bribery and extortion charges against him. As discussed above, the Complaint alleges that CW-3's company was awarded three no-bid contracts at the Johnson Houses between July 2018 and August 2018, when Cartagena was serving as the Johnson Houses superintendent. (Cmplt. (Dkt. No. 1) ¶ 8(b)) The Complaint further alleges that CW-3 paid Cartagena "approximately $500 in cash for each of the no-bid contracts the CW-3 Company received from CARTAGENA at Johnson Houses." The Complaint further states that CW-3 "understood, based on CW-3's interactions with CARTAGENA and with other NYCHA employees who similarly required payments for work, that if CW-3 did not make payments to CARTAGENA, CW-3 would not be awarded additional no-bid contracts for work at [the] Johnson Houses." (Id. ¶¶ 8(b)-(c)) (emphasis in original)

The Complaint further alleges that CW-10's company was awarded twelve no-bid contracts at the Washington Houses between August 2021 and August 2022, while Cartagena was serving as the Washington Houses superintendent. (Id. ¶ 9(b)) The Complaint alleges that

CW-10 paid Cartagena 10% of the contract price in cash for each of those no-bid contracts – approximately $1,000 per contract.  (Id.)  The Complaint further alleges that CW-10 understood, "based on CW-10's interactions with CARTAGENA and with other NYCHA employees who similarly required payments for work, that if CW-10 did not make payments to CARTAGENA, CW-10 would not be awarded additional no-bid contracts for work at [the] Washington Houses." (Id. ¶ 9(c)) (emphasis in original)

On October 18, 2024, the Government provided Cartagena with spreadsheets concerning "'NYCHA Purchase Order Data,' [which] are master NYCHA records reflecting 'micro purchase' procurements during the relevant time period."  (Walsh Aff., Ex. 4 (Oct. 18, 2024 Govt. Ltr.) (Dkt. No. 41-4) at 3)  The Government explained to Cartagena that "to the extent that [you] request[] information regarding the number, names, and developments where . . . contractors [who identified the defendant but who stated that they were not asked by the defendant to pay bribes and/or that they did not pay the defendant bribes] worked, the Government refers you to USAO_00000001 through USAO_00000003, which are spreadsheets containing NYCHA purchase order data that were produced to you on October 18, 2024.  These spreadsheets were exported from a database maintained by NYCHA and may be filtered and sorted by date and development, among other parameters."  (Walsh Aff., Ex. 7 (Jan. 21, 2025 Govt. Ltr.) (Dkt. No. 41-7) at 3)

In a February 3, 2025 letter, the Government informed Cartagena that it "intend[ed] to prove at trial that the defendant accepted bribes at or near the following locations and during the following approximate time periods:"

1. Johnson Houses, 1844 Lexington Avenue, New York, New York, 10029.
   - July 2018 to August 2018:  approximately 2 bribes from one contractor in connection with no-bid contracts at the development.

2. Castle Hill Houses, 645 Castle Hill Avenue, Bronx, New York 10473.
   - December 2018 to July 2019: approximately 1 bribe from one contractor in connection with a bid-contract at the development. The bribe was paid at the development before the job under that contract was closed.

3. Washington Houses, 1773 Third Avenue, New York, New York 10029.
   - August 2021 to August 2022: approximately 12 bribes from one contractor in connection with no-bid contracts at the development.
   - 2021 to 2022: approximately 1 to 2 bribes from one contractor in connection with no-bid contracts at the development.

(Walsh Aff., Ex. 8 (Feb. 3, 2025 Ltr.) (Dkt. No. 41-8) at 2-3)

On May 9, 2025, the Government produced Section 3500 material, providing Cartagena with additional information about the nature of the charges against him. (see Dkt. No. 60 [what is Dkt. 60?]) On May 13, 2025, the Government identified twenty-seven witness statements – all contained in the Section 3500 production – as particularly relevant to the five contractor witnesses' anticipated testimony at trial. (See Dkt. No. 66) These witness statements contain information responsive to many of the requests in Cartagena's requested bill of particulars, including details as to the number and identity of the contractors alleged to have made payments to Cartagena (see, e.g., 3501-028 at 2; 3502-045 at 1; 3503-238 at 1; 3506-152 at 2; 3507-023 at 2); the companies for which those contractors worked (see, e.g., 3501-008 at 1; 3502-045 at 1; 3503-256 at 1; 3506-152 at 6; 3507-025 at 1); the approximate date of certain bribes (see, e.g., 3501-028 at 3; 3503-238 at 2); the location where certain bribes were paid or solicited (see, e.g., 3501-028 at 3; 3502-045 at 2; 3503-256 at 4; 3506-152 at 6; 3507-023 at 3); the approximate amount of certain bribes (see, e.g., 3501-028 at 3; 3503-256 at 4; 3506-152 at 6; 3507-023 at 3); and certain contracts allegedly awarded in connection with bribes or solicitations (see, e.g., 3501-028 at 3; 3502-045 at 2; 3503-238 at 2-3; 3507-023 at 3).

The Court concludes that the Government has provided sufficient information about the nature of the charges against Cartagena to allow him to "'prepare for trial, to prevent

surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" D'Amico, 734 F. Supp. 2d at 335 (quoting Davidoff, 845 F.2d at 1154). Accordingly, Cartagena's motion for a bill of particulars will be denied.

**III.     MOTION FOR _BRADY_ MATERIAL**

Cartagena seeks the production of evidence favorable to him under Brady v. Maryland, 373 U.S. 83, 83 (1963), and in particular seeks "the names of those with whom the Government met who stated [that Cartagena] never solicited or received a bribe" and "the name and contact information of any vendor/contractor known to law enforcement with whom Mr. Cartagena worked who indicated that he did not solicit or accept any bribes." (Def. Br. (Dkt. No. 40) at 33, 38) (emphasis in original)  After the Government provided Cartagena with Section 3500 material on May 9, 2025, Cartagena's counsel stated that the only remaining Brady issue concerned the newly disclosed fact that one anticipated contractor witness – who the Government had previously represented identified a photograph of Cartagena on December 7, 2023  – did not recognize a photograph of Cartagena on June 16, 2023.  (See May 15, 2025 Tr. at 7-8, 13, 35) (citing 3503-257 at 5-6 and Govt. Resp., Ex. 1 (Hughes Decl.) (Dkt. No. 52-1) ¶ 4)

Under the Due Process Clause, the Government has a continuing obligation to provide Brady material to the accused.  Brady, 373 U.S. at 87.  On September 18, 2024, Magistrate Judge Robyn Tarnofsky entered an order, "pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116-182, 134 Stat. 894 (Oct. 21, 2020), to confirm the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations." (Dkt. No. 29 at 1)  Furthermore, the Government has explicitly acknowledged that it is "aware of [its] disclosure obligations, including those arising under . . . Brady v. Maryland, 373 U.S. 83 (1963) and its progeny," and has asserted that it has "complied with those

obligations, and will continue to do so, regardless of whether [the defense] specifically request[s] particular information or material or how [the defense] characterize[s] any information or material that [it] request[s]." (Walsh Aff., Ex. 7 (Jan. 21, 2025 Govt. Ltr) (Dkt. No. 41-7) at 2) No more is required. See United States v. Gallo, No. 98 CR. 338(JGK), 1999 WL 9848, at *8 (S.D.N.Y. Jan.11, 1999) (denying motion to compel production of Brady material where "the Government represents that it is aware of its obligations under Brady . . . and will produce any Brady material to the defense well before trial"); United States v. Acosta, No. S1 12 CR 224 PGG, 2013 WL 1890337, at *17 (S.D.N.Y. May 6, 2013) (same).

As to contractors who told the Government that Cartagena never solicited or received a bribe from them, the Government states that it "has no reason to believe that contractors who recognized the defendant but who did not pay him bribes were witnesses to or had knowledge regarding the payment (or non-payment) of bribes by others." (Govt. Opp. (Dkt. No. 46) at 31) (emphasis in original)  Accordingly, "the identities [of any such contractors are] neither exculpatory nor material, and thus, not Brady material." (Id.)  The Government nonetheless "reiterates . . . that consistent with its practice in the trials of other NYCHA employees arising from the same investigation, it will disclose the identities and statements of witnesses who identified the defendant in the Photo Book, but who indicated that they did not pay the defendant bribes or extortion payments at the same time that it discloses witness materials pursuant to Section 3500 on May 9, 2025." (Id.)

While Cartagena contends that any such contractors "may provide material support for evidence of innocence, misidentification, and or good character, and therefore should be disclosed sufficiently in advance of trial so the defense can determine how it wants to use this information" (Def. Br. (Dkt. No. 40) at 35), even assuming arguendo that such evidence

constitutes <u>Brady</u> material, Cartagena has not explained why the parties' agreed-upon disclosure schedule does not allow the defense adequate time to analyze this information and determine how to use it at the June 9, 2025 trial.  Nor has Cartagena explained why the Government's May 9, 2025 disclosure of the fact that one contractor witness did not recognize a photograph of Cartagena on June 16, 2023 – but identified a photograph of Cartagena on December 7, 2023 – does not allow the defense adequate time to analyze this information and determine how to use it at the June 9, 2025 trial, particularly given that the Court has scheduled a pretrial hearing on May 29, 2025 concerning all of the identification evidence.

Accordingly, Cartagena's motion for production of <u>Brady</u> materials will be denied.

## CONCLUSION

For the reasons stated above, Cartagena's motions seeking dismissal of the Indictment, a bill of particulars, and production of <u>Brady</u> material are denied.

Dated: New York, New York
       May 21, 2025

SO ORDERED.

*Paul G. Gardephe*

Paul G. Gardephe
United States District Judge